IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**GREAT AMERICAN INSURANCE COMPANY**, an Ohio Corporation,

            Plaintiff,

    v.

**MATTHEW LINDERMAN** and **RAQUEL LINDERMAN,** husband and wife; **JEFF WALDIEN,** an individual; **PRECISION MOBILE INTEGRATION, LLC**, an Oregon Limited Liability Company; and **J. WALDIEN DESIGNS**, an Oregon Limited Liability Company,

            Defendants.

Case No. 3:15-cv-0115-MO

OPINION AND ORDER

**MOSMAN, J.**,

      Plaintiff Great American Insurance Co. ("Great American") brought this action against

Defendants Matthew Linderman and Racquel Linderman, husband and wife (collectively, "the

Lindermans"); and Jeff Waldien, along with two companies listing Mr. Waldien as registered

agent, Precision Mobile Integration, LLC ("PMI") and J. Waldien Designs ("JWD")

(collectively, "the Waldien defendants"). Great American asserted seven claims against all

defendants: (1) common-law conversion; (2) theft pursuant to Oregon Revised Statute § 164.015;

1—OPINION AND ORDER

(3) theft by deception pursuant to Oregon Revised Statute § 164.085; (4) violation of the Oregon

Racketeer Influenced and Corrupt Organization Act ("ORICO"), Or. Rev. Stat. § 166.715; (5)

common-law civil fraud; (6) unjust enrichment pursuant to Oregon Revised Statute § 646.465;

and (7) fraudulent and illegal conduct such that the corporate veil of PMI and JWD should be

pierced. The complaint invokes this Court's jurisdiction under 28 U.S.C. § 1332.

The Lindermans filed a Motion to Dismiss all claims against Ms. Linderman and claims

two, three, four, five, and seven against Mr. Linderman [13]. The Waldien defendants filed a

Motion to Dismiss all claims [26].

For the reasons explained below, I GRANT all motions and dismiss Great American's

complaint. With respect to all defendants, the following claims are DISMISSED WITH

PREJUDICE: (1) common-law conversion, (2) theft pursuant to § 164.015, and (3) theft by

deception pursuant to § 164.085. With respect to all defendants, the following claims are

DISMISSED WITH LEAVE TO AMEND: (1) violation of ORICO, (2) common-law civil fraud,

(3) unjust enrichment, and (4) conduct such that the corporate veil of PMI and JWD should be

pierced.

## BACKGROUND

Great American is an insurance company that paid a claim to compensate its insured for

damages it alleges the defendants in this case caused. Great American insured Trimble

Navigation Limited, Inc. ("Trimble") against mercantile crime. Pl.'s 1st Am. Compl. [5] at ¶

3.1–3.3. In November 2014, Trimble submitted a claim to Great American for $2,268,471.54. *Id.*

at ¶ 3.33. Great American paid $1,333,873.20 on the claim. *Id.* at ¶ 3.34. Trimble assigned to

Great American its rights against the defendants. *Id.* at ¶ 3.35.

Trimble provides global positioning equipment and software to businesses, including logging operations in Oregon. *Id.* at ¶¶ 3.1, 3.5. Trimble's project in Oregon was called "Blue Ox." Trimble hired Mr. Linderman in 2008 and later promoted him to be its business area manager.[1] *Id.* at ¶ 3.7. Mr. Linderman served in this capacity until Trimble fired him in March 2013. *Id.* at ¶ 3.21.

Great American alleges that Mr. Linderman formed PMI in 2009 to provide services and equipment to Trimble. *Id.* at ¶ 3.8. The complaint then alleges that Mr. Linderman established PMI as a Trimble vendor without disclosing to Trimble that he owned PMI. *Id.* at ¶¶ 3.10–3.11. The complaint also alleges that JWD was "set up to do business with Trimble by [Mr.] Linderman." *Id.* at ¶ 3.12. Though "set up" by Mr. Linderman, JWD was owned by Mr. Waldien, who was an acquaintance and PMI employee of Mr. Linderman. Id. at ¶ 3.9, 3.12.

Great American alleges that PMI and JWD over-billed Trimble for services and goods. According to the complaint, "PMI invoicing routinely included unusually high quantities of Blue Ox brackets." *Id.* at ¶ 3.24. PMI also allegedly "routinely noted miles driven that were not actually driven," "routinely overbilled for truck installs, or billed for installs which actually did not occur," and "routinely failed to return inventory items to Trimble forestry while claiming invoice offsets for the same." *Id.* at ¶¶ 3.24–3.27. For its part, JWD is alleged to have "routinely billed Trimble for design and marketing services that were either not provided or significantly overcharged." *Id.* at ¶ 3.29. The complaint alleges that Trimble overpaid PMI by at least $226,104.38 and overpaid JWD by at least $822,562.00. *Id.* at ¶¶ 3.31–3.32.

The complaint alleges that Mr. Linderman had approval responsibility over invoices issued by PMI and JWD, though the complaint does not specify whether it refers to Mr.

---

[1] The complaint refers to Trimble's dealings with "Defendant Linderman," without specifying whether these dealings were with Mr. Linderman or Ms. Linderman. Contextual clues—including the use of male pronouns—support the assumption that these dealings were with Mr. Linderman.

3—OPINION AND ORDER

Linderman's approval of PMI's and JWD's issuance of invoices or Trimble's payment of the invoices. The complaint alleges that "[a]ll invoices submitted by the defendant vendors PMI and JWD were within [Mr.] Linderman's approval authority of $25,000 per invoice," "[Mr.] Linderman was the sole individual responsible for approving PMI and JWD's invoices," "[Mr.] Linderman was the sole individual responsible for verifying receipt of goods and services from PMI and JWD," and "[Mr.] Linderman was also the only contact person for PMI and JWD correspondence with [Mr.] Waldien." *Id.* at ¶¶ 3.13–3.16. The complaint also alleges that when Trimble managers questioned Mr. Linderman about "large expenses from PMI and JWD," Mr. Linderman provided "inaccurate and misleading responses." *Id.* at ¶¶ 3.19–3.20.

The complaint alleges that Mr. Waldien owned JWD, that he was an employee of PMI, and that he "assisted in the operations of both vendors." *Id.* at ¶¶ 3.9, 3.12, 3.23. The complaint also alleges that Mr. Waldien benefitted personally from his relationship with the vendors. *Id.* at ¶ 3.30.

The complaint's only allegations regarding Ms. Linderman are that she is married to Mr. Linderman and that she "endorsed at least one PMI check." *Id.* at ¶¶ 1.2, 3.28.

## DISCUSSION

### I.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 8 requires that complaints in federal court consist of "a short and plain statement of the claim showing that the pleader is entitled to relief...." Pleadings need not contain detailed factual allegations, but the plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action...." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

On a motion for failure to state a claim, the court is limited in the evidence it may consider. *Am. Family Ass'n, Inc. v. City & County of S.F.,* 277 F.3d 1114, 1120 (9th Cir.2002). The court may consider the pleadings themselves, exhibits that are physically attached to the complaint, and matters of which the court may take judicial notice. *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir.2001). For all other factual matters, the court must assume all allegations in the complaint are true and draw all "reasonable inferences in favor of the nonmoving party." *Holden v. Hagopian,* 978 F.2d 1115, 1118 (9th Cir.1992).

Federal Rule of Civil Procedure 9(b) applies a heightened particularity requirement to pleadings of fraud or mistake. Although state law defines the elements of a claim in a diversity case, the Federal Rules of Civil Procedure govern the manner in which claims are pleaded. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (citing *Hanna v. Plumer*, 380 U.S. 460 (1965) ("The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal."). State law claims sounding in fraud must be pleaded with particularity. *Id.* at 1103 ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action."); *see also Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (superseded by statute on other grounds). Rule 9(b) "requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). The Rule 9(b) particularity requirement is designed "to assure that the charge of fraud is responsible and supported, rather

than defamatory and extortionate." *Ackerman v. Nw. Mutual Life Ins. Co.*, 172 F.3d 467, 469

(7th Cir. 1999).

## II.  <u>Conversion Claim</u>

Great American's first claim is titled "Common law conversion." Pl.'s 1st Am. Compl.

[5] at ¶¶ 4.1–4.6. The Waldien defendants moved for dismissal of this claim. Mot. to Dismiss by

Defs. Jeff Waldien, et. al. ("Waldien Mot.") [26] at 4–6. The Lindermans did not move for

dismissal of this specific claim, but did move for dismissal of all claims against Ms. Linderman.

### A.    *The Requirement of a Chattel*

The Waldien defendants cite *Rice v. Rabb*, 320 P.3d 554 (Or. 2014), for a definition of

conversion. That case holds that "[c]onversion is an intentional exercise of dominion or control

over a chattel which so seriously interferes with the right of another to control it that the actor

may justly be required to pay the other the full value of the chattel." *Id.* at 556, n. 4 (quoting

*Mustolda v. Toddy*, 456 P.2d 1004, 1007 (Or. 1969)) (quoting, in turn, *Restatement (Second) of

Torts* § 222A(1) (1965)). The Waldien defendants argue that a dispute over a chattel is a

threshold requirement for a conversion claim and that no chattel is at issue here.

The Waldien defendants argue that a conversion claim requires physically identifiable

money, not just an identified amount of money. They rely on *Gray v. Liberty National Life

Insurance Company*, 623 So. 2d 1156 (Ala. 1993). The court in that case wrote:

> [a]n action alleging conversion of cash lies only where the money involved is
> 'earmarked' or is specific money capable of identification, e.g. money in a bag, coins or
> notes that have been entrusted to the defendant's care, or funds that have otherwise been
> sequestered, and where there is an obligation to keep intact and deliver this specific
> money rather than to merely deliver a certain sum.

*Id.* at 1160 (holding that money paid on pre-authorized checks defendant drew monthly against

plaintiff's bank account was identifiable money).

The Waldien defendants refine their argument about the requirement of a chattel by pointing to an Eastern District of Pennsylvania case holding that a conversion claim cannot be used to reclaim overpayments. The district court in *Rogers v. Comcast Corp.*, 55 F.Supp. 3d 711, 719 (E.D. Pa. 2014), surveyed the law of conversion in several states before applying Massachusetts law. The court concluded that overpayments cannot form the basis for a conversion action because they are not chattels owned by plaintiffs over which defendants exercised dominion and control. *Id.* at 719.

The Waldien defendants rely on a case beyond Oregon, but this case is consistent with Oregon law. In *Craven v. Wright*, 236 P. 1043, 1044 (1925), the Oregon Supreme Court noted that "[w]here a check has been given to a person for one purpose and it has been diverted to a purpose different from that for which it was given, an action in trover may be maintained by the maker thereof for the conversion of the money paid thereon." The court has construed narrowly what it means for a check to be given to a defendant for one purpose and diverted to another. In *United Finance Company v. Anderson*, 319 P.2d 571 (Or. 1957), the court held that a check had not been converted when the only limiting instruction for the check's use was a memorandum on the back of the check and when the defendant may have been a holder in due course of the check. *United Finance*, 319 P.2d at 573 (distinguishing *Craven*, 236 P. 1043).

In its Response to the Waldien defendants Motion, Great American argues that its complaint "specifically identifies fraudulent billing for "Blue Ox [b]rackets." Pl.'s Resp. [27] at 4. Great American contends that these items constituted chattels over which the defendants exercised control. In fact, the complaint reads, "PMI invoicing routinely included unusually high quantities of Blue Ox brackets." 1st Am. Compl. at ¶ 3.24. Read charitably, Great American's complaint pleaded that PMI over-billed Trimble billing for goods PMI did not provide to Trimble, not that

PMI exercised unlawful control over Trimble's property. Read meticulously, the complaint alleges only that the quantities billed were "unusual." This unusual billing is insufficient to support the fraud that Great American identifies in its Response. *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that when a plaintiff alleges a unified course of fraudulent conduct and relies on that allegation as the basis of a claim, "the claim is said to be grounded in fraud or to sound in fraud, and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).") (internal quotation marks omitted).

### B. *Great American's Request for Leave to Plead Replevin*

Great American asks, in the alternative, to be given leave to plead replevin instead of conversion. Oregon cases imply that replevin actions require chattels. *See Windle v. Flinn*, 251 P.2d 136, 148 (Or. 1952) (holding that plaintiffs failed to plead replevin by failing to allege that stock was in the hands of defendants); *Almada v. Vandecar*, 185 P. 907, 908 (Or. 1919) (noting in a case involving a steer that "[r]eplevin is essentially a possessory action."); *Hocks v. Jeremiah*, 759 P.2d 312, 315 (Or. Ct. App. 1988) *adhered to on reconsideration*, 763 P.2d 193 (1988) ("An action for replevin requires proof that the defendant holds property that rightfully belongs to the plaintiff."). An Oregon statute similarly implies the existence of a chattel as an element of replevin. *See* Or. Rev. Stat. § 72.160 ("The buyer has a right of replevin for goods identified to the contract if after reasonable effort the buyer is unable to effect cover for such goods . . ."). The facts that Great American alleges fail to support an action for replevin for the same reasons that they fail to support a claim of conversion.

### B. *Disposition of Motion to Dismiss Conversion Claim*

Great American has not pleaded that the Lindermans and the Waldien defendants exercised dominion over any tangible monies, specific instruments, or other chattels. I find the facts that Great American pleaded are incompatible with a conversion claim.

Federal Rule of Civil Procedure 15(a)(1) provides that parties may amend pleadings once within twenty-one days of serving it, or if the pleading is one to which a responsive pleading is due, within twenty-one days of service of a responsive pleading or motion under Rule 12(b), (e), or (f). Great American amended its complaint on March 2, 2015, and may not now amend as a matter of course. Great American requires the consent of opposing parties or the leave of the court to amend its complaint. Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave when justice so requires." The Ninth Circuit has held that a district court may appropriately deny leave to amend when "any attempt to re-plead [the] claim would be futile." *Silva v. Di Vittorio*, 658 F.3d 1090, 1105 (9th Cir. 2011). Because this dispute is about money, rather than specific notes, coins, or instruments, further allegations will not establish a plausible claim for conversion. And because this claim was inadequately pleaded as to all defendants, I DISMISS WITH PREJUDICE Great American's first claim as to all defendants.

## III.    <u>Claims under Oregon Criminal Theft Statutes</u>

Great American's second claim is tilted "Theft pursuant to ORS § 164.015." Pl.'s Am. Compl. [5] at ¶¶ 5.1–5.5. Great American's third claim is titled "Theft by deception pursuant to ORS § 164.085." *Id.* at ¶¶ 6.1–6.5. The Lindermans contend that criminal charges cannot be brought in this proceeding and that Great American cannot state a claim under the criminal code. Mot. to Dismiss by Matthew and Racquel Linderman ("Linderman Mot.") [13] at 5. The Waldien defendants incorporate the arguments of the Lindermans in the Waldien defendants' Motion to Dismiss. Waldien Mot. [26] at 6. The Lindermans rely on *Kim v. CB Richard Ellis*

*Hawaii, Inc*, 288 F.App'x 312, 313 (9th Cir. 2008), for this argument. Great American correctly

notes that *Kim* interprets Hawaii law and is inapplicable to a claim under Oregon law. Pl.'s Resp.

[19] at 3.

In reply to Great American, the Lindermans point to Oregon law. They cite *Doyle v. City

of Medford*, 337 P.3d 797 (Or. 2014). *Doyle* lays out a two-stage process for determining

whether an Oregon statutory provision creates a private right of action. The court must first ask

"whether the statute expressly or impliedly indicates that the legislature intended to create or to

deny such a right of action." *Id.* at 813. If the court cannot discern any legislative intent to create

or deny a private right of action, it then asks "whether creating a common-law right of action

would be consistent with the statute, appropriate for promoting its policy, and needed to ensure

its effectiveness." *Id.*

A.    ***Statutory Construction***

Courts look to a statute's "text, context, or legislative history" for an indication that the

legislature intended to create a private right of action. *See Id.* at 803–04. In doing so, courts

consider two factors:

> (1) whether the statute refers to civil liability in some way; and (2) whether the statute
> provides no express remedy, civil or otherwise, for its violation and, therefore, there
> would be no remedy of any sort unless the court determined that the legislature impliedly
> created one or the court itself provided one.

*Id.* at 803 (citations omitted).

Great American presents no argument supporting the legislature's intent to create a

private cause of action under Oregon Revised Statute § 164.015 or § 164.085. There are reasons

to think that Great American would find little support for such an argument. The text and context

of Oregon Revised Statutes § 164.015 and § 164.085 fail to support the conclusion that the

legislature intended to create a private cause of action. Both sections define theft without

referring to civil liability. *See* Or. Rev. Stat. §§ 164.015, 1654.085. Moreover, surrounding sections expressly provide for criminal punishment by defining theft as a misdemeanor or felony depending on the value of the property stolen and the circumstances. *See* Or. Rev. Stat. §§ 164.043–164.057.

I conclude that the text and context of the referenced sections do not indicate that the legislature expressly or impliedly intended to create a private statutory action when it criminalized theft.

### B.    *Appropriateness of a Judicially-Created Cause of Action*

If a court determines that there is no discernable legislative intent to create or deny a private right of action, the next question is whether the court should create such a right. *See Doyle*, 337 P.3d at 816 ("That is not the end of the inquiry, however. The question remains whether creation of the common-law right of action that plaintiffs advance would be consistent with the legislative purpose, appropriate for promoting its policy, and needed to ensure its effectiveness."). The Oregon Supreme Court has described the circumstances in which it will create a common-law right of action not envisioned by the legislature as "limited." *Id.* at 804. The Oregon Supreme Court uses factors laid out in comment d to § 874A of the *Restatement (Second) of Torts* as well as factors addressed in its own opinions. *Doyle*, 337 P.3d at 809. These factors include:

> the nature of the legislative provision at issue, the adequacy of existing claims for relief and associated remedies, the extent to which a common-law right of action will aid, supplement, or interfere with existing claims and remedies and other means of enforcement, the significance of the purpose that the legislative body is seeking to effectuate, the extent of the change in existing common-law principles that provision of a right of action would produce, and the burden that the right of action would place on the courts.

*Id.* at 813–14.

Again, Great American makes no argument that these factors favor the judicial creation of a private cause of action based on Oregon Revised Statutes § 164.015 and § 164.085. And such an argument would likely be unavailing. As I explain above, the cause of action that Great American proposes would do little to supplement the work that criminal sanctions and judgments of restitution do in advancing the legislature's goals in adopting the theft statutes. As part of a criminal sentence, an Oregon court may enter a judgment requiring a defendant to pay restitution to a victim who has suffered economic damages. *See* Or. Rev. Stat. § 137.106. Additionally, Oregon law allows for private actions for conversion of property and for fraud. *See Mustola v. Toddy*, 456 P.2d 1004, 1007 (Or. 1969); *Strawn v. Farmers Ins. Co. of Or.*, 258 P.3d 1199, 1209 *adhered to on reconsideration,* 256 P.3d 100 (Or. 2011).

Great American pleaded a claim that is not legally cognizable as a private claim, so an attempt to re-plead would be futile. I GRANT the Lindermans' and the Waldien defendants' motion to dismiss with respect to Great American's claims two and three. The referenced claims are DISMISSED WITH PREJUDICE as to all defendants.

## IV.    <u>Oregon RICO</u>

Great American's fourth claim is titled "Violation of the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO) Pursuant to ORS § 166.715-166.735." Pl.'s 1st Am. Compl. [5] at ¶¶ 7.1–7.7. The Lindermans contend that Great American may not file a claim under ORICO unless the defendants have previously been convicted of the predicate criminal offenses. Linderman Mot. [13] at 5. The Waldien defendants incorporate the Lindermans' motion to dismiss Great American's ORICO claim.

The Lindermans cite *Cruze v. Hudler*, 267 P.3d 176 (Or. Ct. App. 2011), which holds that "unless the violation is based on racketeering activity specifically listed in subparagraph (B), a

plaintiff now cannot bring an ORICO claim until a criminal conviction for the underlying racketeering activity has been obtained and any rights of appeal have expired." *Cruze*, 267 P.3d at 186 *opinion adhered to as modified on reconsideration*, 274 P.3d 858 (Or. Ct. App. 2012). *Cruze* explains that many business-related predicate crimes require a criminal conviction before a civil case may be brought and are not covered by the exception in subparagraph (B). *Id.* at 186–87 ("Securities fraud, a racketeering activity under ORS 166.715(6)(a)(A), is not listed, nor are many other business-related crimes.")

Great American responds that the subparagraph *Cruze* refers to, §166.725(7)(a)(B), allows for a civil suit to proceed without a prior criminal conviction for specific predicate offenses. Among the offenses that do not require a criminal conviction is forgery. Great American states in its Response that "[u]nder ORS 165.007, a person commits forgery in the second degree by falsely altering written instruments with an intent to defraud." Pl.'s Resp. [19] at 3. This is a fair characterization of § 165.007, which also prohibits making, completing, or uttering a written instrument with "intent to injure or defraud." Or. Rev. Stat. § 165.007.

Section 165.002 defines "make," "complete," "alter," and "utter." The definitions of falsely making, completing, and altering a written instrument all refer to actions that create the impression that a written instrument is an authentic creation of its ostensible maker or authorized by its ostensible maker. *See* Or. Rev. Stat. § 165.002(4)–(6). In addition to making, completing, or altering an instrument, § 165.007 prohibits "[u]tter[ing] a written instrument which the person knows to be forged" with intent to injure or defraud. Or. Rev. Stat. §165.007(1)(b). The definition of utter is "to issue, deliver, publish, circulate, disseminate, transfer or tender a written instrument or other object to another." Or. Rev. Stat. 165.002(7). But "utter" is coupled with "forged" in the section Great American cites. A forged instrument is "a written instrument which

has been falsely made, completed or altered." Or. Rev. Stat. § 165.002(8). So all acts criminalized by § 165.007 involve falsely making an instrument appear to issue from an ostensible creator.

Great American has pleaded that some of the defendants in this case created invoices that over-billed Trimble. Without an allegation that these invoices falsely purported to issue from an ostensible creator, the complaint is insufficient to support an allegation of forgery. Great American's argument that it has pleaded facts sufficient to allege a violation of ORICO absent a prior criminal conviction for a predicate offense is unavailing. To state a claim under this theory, Great American must allege further facts.

I GRANT the motion by all defendants to dismiss Great American's claim under ORICO. Great American's sixth claim is DISMISSED WITH LEAVE TO AMEND. Should it choose to amend its complaint, Great American shall submit its amended complaint within fourteen days of the date of this order.

## V.    <u>Fraud Claim</u>

Great American's fifth claim is titled "Common law civil fraud." Pl.'s 1st Am. Compl. at ¶¶ 8.1–8.12. As I explain above, state law defines the substance of a fraud claim, but the Federal Rules of Civil Procedure govern how it must be pleaded. *See Vess*, 317 F.3d at 1102–03. In Oregon,

> [t]he essential elements of a common-law fraud claim are: [1] the defendant made a material misrepresentation that was false; [2] the defendant did so knowing that the representation as false; [3] the defendant intended the plaintiff to rely on the misrepresentation; [4] the plaintiff justifiably relied on the misrepresentation; and [5] the plaintiff was damaged as a result of that reliance.

*Strawn*, 258 P.3d at 1209. *But see Briscoe v. Pittman*, 522 P.2d 886, 889 (Or. 1974).

All defendants moved to dismiss this claim. The Lindermans make two arguments: (1) that the allegations in Great American's complaint fail to meet the heightened standard of pleading under Federal Rule of Civil Procedure 9(b) and (2) that Great American did not plead as to Trimble's justifiable reliance on defendants' fraudulent misrepresentations. The Waldien defendants incorporate the Lindermans' arguments and also argue that the complaint is less detailed with respect to them than it is with respect to the Lindermans.

//

//

### A.    *Adequacy of Fraud Pleading*

The Lindermans cite *Vess v. Ciba-Geigy Corp.* for the principle that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997). In *Vess*, the court concluded that a complaint against the American Psychiatric Association ("APA") for fraudulently promoting the sale of Ritalin was insufficiently particular. *Id.* at 1107. Todd and Deborah Vess, plaintiffs in that case, alleged that Novartis, a primary Ritalin manufacturer, had paid the APA, but the Vesses "offer[ed] scant specifics as to when or between whom the money changed hands." *Id.* at 1106. The Vesses alleged that the APA had fraudulently included Attention Deficit Disorder ("ADD") in the association's *Diagnostic and Statistical Manual* even though ADD failed to meet the APA's own diagnostic criteria, but the plaintiffs failed to indicate which established criteria for inclusion ADD failed to meet. *Id.* They alleged that the APA had tried to conceal its fraud by clustering testing data for ADD with data for other conditions, but failed to specify the names of those conditions. *Id.* at 1106–07. The Vesses also

alleged that the APA had misrepresented its connection to Novartis, but failed to identify any specific misrepresentations. *Id.* at 1107.

Other cases provide guidance on the particularity required for timing and source of fraud. The Seventh Circuit upheld dismissal of a complaint subject to the heightened pleading standard as insufficiently particular with respect to time when the complaint described events as occurring between July 2007 and January 2008. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949 (7th Cir. 2013). The Ninth Circuit has also held that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant … and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 766–65 (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437,1439 (M.D. Fla. 1998)).

Great American's allegations against Mr. Waldien and Ms. Linderman are insufficient to establish that they committed fraud or that they participated in a conspiracy to commit fraud. The complaint only alleges that Mr. Waldien owned a corporation, was employed by another, and "assisted in the operations of both vendors," and that he benefitted. The complaint against Ms. Linderman alleges only that she is married to Mr. Linderman and that she endorsed at least one PMI check. These allegations fail to state how either of these defendants participated in any of the elements of fraud described by the court in *Strawn*.

The allegations against Mr. Linderman, PMI, and JWD are more detailed, but still pleaded with insufficient particularity. The complaint alleges that Mr. Linderman failed to disclose to his employer his involvement in PMI and JWD. This nondisclosure may constitute a material misrepresentation under Oregon law. *See Pollock v. D.R. Horton, Inc.-Portland*, 77 P.3d 1120, 1132 (Or. Ct. App. 2003) (holding that nondisclosure amounts to a misrepresentation when

the defendant owed the plaintiff a fiduciary duty, but that the non-disclosure "must relate to something that constitutes a representation."). But the allegations linking this nondisclosure to Trimble's damages are not sufficiently particular. The complaint fails to allege with particularity when PMI and JWD over-billed Trimble, stating only that the fraud occurred between 2009 and 2013, a period longer than the one the Seventh Circuit found insufficiently particular in *Cincinnati Life Ins. Co. v. Beyrer*. *See Cincinnati Life Ins. Co.*, 722 F.3d at 949. Rather than stating the dates and contents of particular invoices, the complaint alleges that activities constituting fraud happened "routinely." Pl.'s 1st Am. Compl. [5] at ¶¶ 3.24–3.27, 3.29. Similarly, the complaint alleges that PMI and JWD over-billed Trimble by particular amounts, but does not specify specific false statements in specific invoices.

Great American's statement of the content of later misrepresentations is also sparse. The complaint alleges that Mr. Linderman provided "inaccurate and misleading responses" to questions from Trimble management, but does not say what the content of those statements was. *Id.* at ¶ 3.20.

**B.    *Failure to Plead Reliance***

The Lindermans argue that Great American failed to plead that Trimble justifiably relied on the truth of the defendants' statements. Linderman Mot. [13] at 7. The Oregon Supreme Court held in *Briscoe v. Pittman*, 522 P.2d 886 (Or. 1974), that reliance is a legal conclusion that need not be pleaded. *Briscoe*, 522 P.2d at 889 *overruled on other grounds by Halford v. Simpson*, 553 P.2d 1055 (Or. 1976); *see also Hansen v. W. Home Ins. Co.*, 747 P.2d 1007, 1010 (Or. 1987).

The Oregon Supreme Court's holding in Briscoe appears to be based on a conclusion about substantive law, rather than procedure, so governs what Great American must plead here. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("The broad command of Erie was . . . federal

courts are to apply state substantive law and federal procedural law."). The court in *Briscoe*

reasoned that the nine elements Oregon courts at that time required to state a fraud claim "unduly

fractionalize the essential elements." *Briscoe*, 522 P.2d at 610. In addition to concluding that

reliance need not be pleaded, the court concluded that there need be no "finding of fact" of

reliance. *Id.*

Because Great American's complaint fails to plead with particularity allegations

grounded in fraud, I GRANT all motions to dismiss Great American's common-law fraud claim.

Great American's fifth claim is DISMISSED WITH LEAVE TO AMEND. Should it choose to

amend its complaint, Great American shall submit its amended complaint within fourteen days of

the date of this order.

## VI.    Unjust Enrichment Claim

Great American's sixth claim is titled "Unjust Enrichment Pursuant to ORS § 646.465.

Pl.'s 1st Am. Compl. [5] at ¶¶ 9.1–9.6. The Waldien defendants moved for dismissal of this

claim, noting that Oregon Revised Statute § 646.465 pertains to trade secrets and is inapplicable

to the facts that Great American alleged. Waldien Defs.' Mot. [26] at 8. The Lindermans did not

move for dismissal of this specific claim, but did move for dismissal of all claims against Ms.

Linderman.

### A.    *Statutory Claim*

Section 646.465 allows for plaintiffs to recover damages against defendants for

"misappropriation." Or. Rev. Stat. 646.465(1)–(3). The statute defines misappropriation in four

different ways. Or. Rev. Stat. 646.461(a)–(d). Each definition refers to acquisition or disclosure

of a trade secret. *Id.* The misappropriation the statute refers to is not the misappropriation that

Great American alleges.

**B.**    *Great American's Request for Leave to Plead Common-Law Unjust Enrichment*

In its reply brief, Great American requests leave to plead common-law unjust enrichment. Unjust enrichment is a quasi-contract claim. In Oregon, "[t]he elements of the quasi-contractual claim of unjust enrichment are (1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." *Wilson v. Gutierrez*, 323 P.3d 974, 978 (Or. Ct. App. 2014). The last element is a legal conclusion. *Id.* Benefit is broadly defined and includes money. *Id.*

The Waldien defendants contend that an unjust enrichment claim does not lie where the plaintiff alleges an overpayment. The Waldien defendants cite cases that are inapposite. Both involved overpayments, but it was the existence of a written contract, not the nature of the property conferred, that led the courts the Waldien defendants cite to dismiss the unjust enrichment claims. *See Picture People, Inc. v. Imaging Fin. Servs., Inc.*, 735 F. Supp. 2d 12, 20 (S.D.N.Y. 2010) ("An unjust enrichment claim therefore does not lie where a valid contract covers the subject matter that gives rise to the alleged enrichment."); *Uitz v. Lustigman Firm, P.C.*, No. 13 CIV. 6040 RMB, 2014 WL 3767056, at *3 (S.D.N.Y. July 28, 2014) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.") (internal quotation marks omitted).

Because this dispute is not about trade secrets, further allegations will not establish a plausible claim of unjust enrichment under the statute cited. Great American may, however, be able to amend its complaint to allege facts necessary to state a claim for common-law unjust enrichment. Great American's sixth claim is DISMISSED WITH LEAVE TO AMEND. Should

it choose to amend its complaint, Great American shall submit its amended complaint within fourteen days of the date of this order.

### VII.    <u>Piercing the Corporate Veil</u>

Great American pleads that Mr. Waldien and Mr. Linderman are personally liable for damages caused by JWD and PMI. Pl.'s 1st Am. Compl. [5] at ¶¶ 10.1–10.9. The Lindermans contend that the allegations of fraud in Great American's claim for the disregard of the corporate entity are insufficiently particular to support disregarding the corporate entities. Linderman Mot. [13] at 8–9. The Waliden defendants incorporate this argument and also argue that Oregon law only allows a corporate veil to be pierced when the plaintiff's inability to collect from the corporation resulted from improper conduct on the part of the shareholder. Waldien Mot.[26] at 8–9.

In *Amfac Foods, Inc. v. Int'l Systems & Controls Corp.*, 654 P.2d 1092 (Or. 1982), the Oregon Supreme Court distinguished between different methods of reaching the assets of corporate shareholders. The court wrote:

> Where the corporation's liability to the plaintiff is incurred while the corporation is acting as agent for the shareholder, the liability of the shareholder, as the principal, is governed by traditional agency and respondeat superior principles. In such a case it is not necessary to disregard the separate corporate status to impose liability upon the shareholder for obligations not met by the corporation.

*Amfac Foods*, 654 P.2d at 1098. The court also noted that "in many cases, a fraud form of action will afford relief, making it unnecessary to assert a claim that corporate separateness should be disregarded. *Id.* Great American has not pleaded that JWD or PMI acted as the agent of any of the individual defendants. Great American has pleaded that the individual defendants acted fraudulently, but as I explain above, Great American has made these allegations with insufficient particularity. *See Kearns,* 567 F.3d at 1125.

The Oregon Supreme Court described the rule for disregarding the corporate entity in

*Amfac Foods*:

> When a plaintiff seeks to collect a corporate debt from a shareholder by virtue of the shareholder's control over the debtor corporation rather than on some other theory, the plaintiff must allege and prove not only that the debtor corporation was under the actual control of the shareholder but also that the plaintiff's inability to collect from the corporation resulted from some form of improper conduct on the part of the shareholder.

*Amfac Foods*, 654 P.2d at 1101. Improper conduct includes inadequate capitalization, payment of excessive dividends, misrepresentations to creditors, and use of subsidiaries to violate a statue. *Amfac Foods* involved a contract dispute. *Id.* at 1904. The court declined to decide whether there was a different basis for piercing the corporate veil when a claim arose out of tort instead of contract. *Id.* at 1102, n. 15. In a subsequent case, the Oregon Court of Appeals applied the *Amfac Foods* rule to a tort claim. *See Handam v. Wilsonville Holiday Partners, LLC*, 190 P.3d 480, 483–84 (Or. Ct. App. 2008).

Great American has not alleged facts sufficient to support the disregard of the corporate entities of PMI and JWD. Great American pleaded that Mr. Waliden owned JWD, but has not pleaded who owned or controlled PMI. Great American pleaded that Mr. Linderman acted dishonestly in responding to questions Trimble posed to him, but has not pleaded that Mr. Waldien did the same. The complaint does not allege that any improper conduct made it impossible for Trimble or Great American to collect from either company.

I GRANT all defendants' motions to dismiss the corporate veil-piercing claim. That claim is DISMISSED WITH LEAVE TO AMEND. Should it choose to amend its complaint, Great American shall submit its amended complaint within fourteen days of the date of this order.

## CONCLUSION

I GRANT defendants' motions [13 and 26] and DISMISS Great American's complaint. Claims one, two, and three, are DISMISSED WITH PREJUDICE. Great American has LEAVE TO AMEND claim four regarding ORICO, claim five regarding fraud, claim six regarding unjust enrichment, and claim seven regarding corporate veil-piercing. Great American may also reassert its seventh claim that the PMI and JWD corporate entities should be disregarded. Should it choose to amend its complaint, Great American shall submit its amended complaint within fourteen days of the date of this order.  Additionally, Great America's Motion for Entry of Default [15] is DENIED AS MOOT.

IT IS SO ORDERED

DATED this __15th__ day of July, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

22—OPINION AND ORDER